UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| BRIAN FELLOWS, on his own behalf and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>AMERICAN CAMPUS COMMUNITIES SERVICES, INC., et al.,<br><br>Defendants. | Case No. 4:16-cv-01611-JAR |

## MEMORANDUM AND ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND FOR AN AWARD OF ATTORNEYS' FEES

This matter comes before the Court on Plaintiff's motion, to which Defendants have consented, for final approval of the proposed class action settlement of the above-referenced case (the "Settlement"), and for an award of attorneys' fees and expenses for Class Counsel. Being duly advised, the Court makes the following findings of fact and conclusions of law, and rules as follows:

I.  **FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff Brian Fellows brings this case on behalf of a class of all those similarly situated with respect to Defendants' alleged marketing practices with respect to their student-focused housing located in Columbia, Missouri. Plaintiff's case stems from Defendants' alleged conduct in the marketing of their lease rates for Defendants' apartment units. Specifically, Plaintiff alleges that Defendants advertised "monthly" lease rates for their apartment units that are lower than the actual monthly rate charged to their student tenants in their lease agreements. Dkt. 29,

1

First Amended Complaint, at ¶1. For example, in their marketing materials, Defendants would advertise "monthly" rent rates, even though the lease itself only lasted eleven and a half months even though tenants were expected to pay twelve full months at the "monthly" rate of rent. Id., at ¶¶2-3. Thus, for the first half month of occupancy, Plaintiff alleges that tenants were paying 200% of the monthly rate of rent for the time they were actually permitted to occupy the premises. Id. at ¶3. Plaintiff alleged this marketing was deceptive, and asserted claims pursuant to the Missouri Merchandising Practices Act, and for unjust enrichment. Id., *passim*. In the wake of the filing of this case, Defendants changed the manner in which their market their properties, replacing the "monthly" verbiage to instead refer to "installment" payments.

The proposed Settlement's details are contained in the Notice of Settlement signed by the parties, which was submitted to the Court on January 30, 2018 [Dkt. 39] (which was then supplemented on February 22 [Dkt. 43-1]) and incorporated into this Court's Preliminary Approval Orders [Dkts. 42 & 46]. The Settlement Class is defined as follows:

> Any and all persons who entered into a residential lease with ACC (as used herein "ACC" shall mean, collectively and individually, Defendants and all of their respective past, present, and future affiliates, parents, subsidiaries, sister companies, and all of their respective past, present and future officials, agents, employees, representatives, shareholders, partners, members, directors, officers, insurers, reinsurers, predecessors, successors, heirs, assigns, and attorneys) for housing located in the State of Missouri where: (1) the lease contract was not based on a standard calendar month occupancy, (2) the person paid ACC the full monthly advertised rate for the first month when occupancy began (and the eleven subsequent months), and (3) the person was not permitted to occupy some portion of the first month when occupancy began without paying an additional amount to do so but nonetheless paid rent at the advertised "monthly" rate. The Settlement Class shall refer to persons who entered into this new lease who occupied the property after November 1, 2012[1] through the date that ACC sold the properties on November 15, 2016.

---

[1] This is the date ACC acquired the properties.

The Settlement Class does not include customers who only entered into Renewal Leases, which are defined as leases which immediately follow an existing lease, without a surrender of occupancy, and which include a full twelve month occupancy of the premises. The Settlement Class also excludes members of the Court overseeing this Lawsuit, and officers, directors, and employees of the Defendant.

This Court previously preliminarily approved the proposed settlement (the "Settlement") of this action on behalf of a Class on February 2, 2018 [Dkt. 42], which approval was later amended on March 6, 2018 [Dkt. 26]. Notice issued per the Notice Plan approved by this Court, and Class Members were afforded the opportunity to submit claims, opt out of the Settlement, or object to the Settlement. This matter now comes before the Court for final approval and for approval of attorneys' fees and a service award for the Class Representative. For the reasons that follow, the Court finds that the settlement is fair, reasonable, and in the best interests of the Class. The Court further finds that the Class, which was preliminarily certified for settlement purposes, should now be finally certified for Settlement. Finally, the Court concludes that the award of attorneys' fees and costs in the amount of $125,000 is appropriate, and that the Service Award of $5,000 is appropriate, and therefore grants Plaintiffs' motion on those matters as well.

## II. STANDARD OF REVIEW

It has long been the case that the negotiated resolution of litigation is favored by federal courts. *MSK EyEs Ltd. v. Wells Fargo Bank, Nat'l Ass'n*, 546 F.3d 533, 541 (8th Cir. 2008) (noting "our strong public policy of encouraging settlement"); *Thompson v. Edward D. Jones & Co.*, 992 F.2d 187, 191 (8th Cir. 1993) (noting "the paramount policy of encouraging settlements"); *Little Rock Sch. Dist. v. Pulaski County Special Sch. Dist. No. 1*, 921 F.2d 1371, 1383 (8th Cir. 1990) ("Courts should hospitably receive

[settlements]."). "[C]ourts have long recognized that public policy favors settlements as a cost-efficient and convenient means of resolving disputes and conserving judicial resources." *United States v. Bliss*, 133 F.R.D. 559, 567 (E.D. Mo. 1990). This is particularly true in the context of complex class actions. *Schoenbaum v. E.I. Dupont De Nemours & Co.*, No. 4:05CV01108 ERW, 2009 U.S. Dist. LEXIS 114080, at *12 (E.D. Mo. Dec. 8, 2009), citing *Cohn v. Nelson*, 375 F. Supp. 2d 844, 852 (E.D. Mo. 2005) ("The law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation."). Because settlements are favored by the courts, they are generally assumed to be fair and reasonable and courts should approach them with a presumption in their favor. *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1148 (8th Cir. 1999).

The Court's role in evaluating this Settlement is to ensure that the agreement is fair, reasonable, and adequate under the circumstances, and that it is not the product of fraud or collusion. *Keil v. Lopez*, 862 F.3d 685, 693 (8th Cir. 2017). The Eighth Circuit has identified four factors to be considered in determining whether a class action settlement is fair, reasonable and adequate: (1) the merits of the plaintiff's case, weighed against the terms of the settlement; (2) the defendant's financial condition; (3) the complexity and expense of further litigation; and (4) the amount of opposition to the settlement. *Huyer v. Njema*, 847 F.3d 934, 939 (8th Cir. 2017), *citing Van Horn v. Trickey*, 840 F.2d 604 (8th Cir. 1988); *see also In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 932 (8th Cir. 2005).

## III. EVALUATION OF THE SETTLEMENT

### A. Settlement Structure

#### 1. The Notice Program and Claims Process

Notice has been issued to the Class per this Court's Order. The Court previously approved Signal Interactive Media LLC ("Signal") to serve as the Settlement Administrator, and Signal has provided a report, which has been made available to the Court, outlining the results of the notice program and the claims received. *See* Dkt. 52-1. The Notice program implemented in this case as described in the report, which included direct notice via mail and email, and supplemented by publication notice on Facebook, was the best notice practicable under the circumstances and readily met the standard set forth in *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

The Court finds that parties implemented a highly streamlined claims process designed to make it very easy for eligible claimants to participate in the Settlement. For individuals who were already in Defendants' database, claimants were sent notice via email and postcard with a unique code that could be entered directly in the settlement website. Once entered, the claimant's information was pre-populated, such that all he or she would need to do to perfect a claim would to be confirm the information was correct (or correct it as necessary), attest to their eligibility, and elect how to receive settlement benefits. In the alternative, the postcard notice contained a tear off claim form that would allow a claimant to immediately verify the information and mail it back. This robust notice program and simplified claims process had the intended effect of maximizing participation in the Settlement, with a claims rate of over 30%. *See* Dkt. 52-1. The opportunity to so easily submit a claim is a benefit to the Class that further supports the Settlement.

All costs of notice and claims administration are being paid by Defendants in addition to the Class Benefit Fund and will not reduce the amounts available to Class Members. Based upon work done to date and the work that remains to be done, the administrative cost is estimated to total approximately $39,775. *Id.* The highly effective notice program and claims administration is itself a significant benefit to the Class.

### 2. Settlement Benefits for Class Members

The Court finds that the Settlement provides significant cash benefits for the Class Members. Defendant has agreed to pay $275,000 into a fund for the benefit of Class Members (the "Class Benefit Fund" or "Fund"), which will be divided and distributed in equal parts and in its entirety to all Class Members who submitted valid claims – no portion of the fund will revert to Defendants under any circumstances.

The Court notes that the difference in damages of any individual class member per lease is relatively small, and that the streamlining of the claims process realized by equally sharing on a per lease basis is preferable to a more complex claims structure. The Court further finds that the class members with more than one eligible lease were able to claim the number of shares to match the number of leases they had; this rationally ties each Class Members' recovery to their actual damages, and is fair and reasonable.

Notice has been issued to the Class, and the Court finds that the reaction of the Class has been outstanding. The Claims Administrator received valid claims from 715 unique claimants, out of 3,644 members of the Class. Dkt. 52-1. Because some of these claimants are entitled to more than one share by virtue of renting at more than one of Defendants' properties, or having multiple unique leases at the same property, the Class Benefit Fund will be distributed into 852 shares and distributed to the Class. *Id.* This results in a recovery of $322.77 per share which is

more than the per lease actual damages Plaintiff Brian Fellows would seek at trial. This recovery on behalf of the Class is outstanding, and strongly supports settlement.

### 3. Class Release

The Court has reviewed the limited release provided on behalf of the Class and finds it reasonable and appropriate, and sufficiently limited to the claims at issue in this litigation.

## B. The Settlement is Fair, Reasonable and in the Best Interests of the Class

### 1. The Class is Being Made Whole

The most important factor relevant to the fairness of a class action settlement is the first one listed: the strength of the plaintiffs' case on the merits balanced against the amount offered in the settlement. *Huyer v. Njema,* 847 F.3d 934, 939 (8th Cir. 2017); *see also Petrovic,* 200 F.3d at 1150. In this case, the amount Class Members who submitted claims will receive is as much or more than their actual damages, and it comes without any reduction for attorneys' fees, litigation costs, or other expenses. Thus, regardless of the strength of the case on the merits, a settlement that provides more than a claimant might hope to receive at trial leaves little incentive to proceed with continued litigation. Far less successful settlements have been approved in this Circuit. *See Keil,* at 696 (collecting cases). This factor strongly supports approval of the settlement.

### 2. The Cost of Continued Litigation Was Significant

The Court notes that this Settlement was reached shortly before briefing on class certification and production of expert reports was scheduled to begin. The discovery necessary to bring the case from its current posture to readiness for trial would no doubt have been costly. Thus, particularly in light of the recovery to the Class, the Court finds that settlement at this juncture on the terms proposed is preferable and more cost-effective than continued litigation. The economic reality of moving forward further supports settlement at this stage of the litigation.

7

### 3. The Reaction of the Class Supports Settlement

The reaction of the Class to the Settlement has been universally positive. No Class Member opted out of the Settlement, nor did any Class Member object to the Settlement. Moreover, a very high percentage of Class Members have submitted claims and sought to participate in the Settlement. The unanimously positive reaction to the Settlement and the absence of any dissent whatsoever clearly supports approval.

### 4. Class Counsel Strongly Endorse the Settlement

The Court also notes that the Parties strongly endorse this Settlement. Courts are entitled to "rely heavily on the opinion of competent counsel." *Armstrong v. Bd. of Sch. Dirs.*, 616 F.2d 305, 325 (7th Cir. 1980). Class Counsel's opinion on the Settlement is entitled to great weight, particularly because: (1) Class Counsel are competent and experienced in class action litigation; (2) Class Counsel engaged in formal and informal discovery and evaluated the claims in the context of settlement negotiations; and (3) the Settlement was reached at arm's length through negotiations by experienced counsel. This factor therefore weighs in favor of approval.

### 5. There Is No Evidence That the Settlement is the Product of Fraud or Collusion

The Court finds that there is no evidence that this Settlement is the product of anything other than arms' length negotiations between experienced counsel, and there is no indicia of fraud or collusion in the Agreement. This further supports final approval of the proposed settlement. Given the foregoing, the Court finds that final approval of the proposed class action settlement is appropriate.

## IV. EVALUATION OF ATTORNEYS' FEES AND SERVICE AWARD

Defendants have agreed to pay up to $125,000 in attorneys' fees and costs, subject the approval of this Court, and Class Counsel have submitted a request for attorneys' fees consistent

with this agreement. In reviewing a request for attorneys' fees, several factors should be considered:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*In re Target Corp. Customer Data Sec. Breach Litig.*, Nos. 15-3909, 15-3912, 16-1203, 16-1245, 16-1408, 2018 U.S. App. LEXIS 15839, at *13-14 n.7 (8th Cir. June 13, 2018).

The Court finds that the applicable factors here all support the requested fee. First and foremost, Class Counsel undertook this litigation on a contingent basis with no guarantee of any fees whatsoever, risking their own money, time and effort, and took time from other endeavors to pursue this action on behalf of the Class. The result obtained – where claimants are recovering as much or more than their actual damages without the risk of trial – is truly outstanding. Further, Class Counsel has significant experience with class action litigation of this sort and have sufficient expertise with this sort of litigation to justify the requested fee.

The Eighth Circuit has endorsed two approaches to analyzing a request for attorneys' fees: (1) the lodestar approach, and (2) the "percentage of the benefit," or "common fund," approach. *Keil v. Lopez*, 862 F.3d 685, 701 (8th Cir. 2017), citing *Johnston v. Comerica Mortg. Corp.*, 83 F.3d 241, 244 (8th Cir. 1996). "It is within the discretion of the district court to choose which method to apply, as well as to determine the resulting amount that constitutes a reasonable award of attorney's fees in a given case." *In re Life Time Fitness, Inc., Tel. Consumer Prot. Act (TCPA) Litig.*, 847 F.3d 619, 622 (8th Cir. 2017) (quotations and citations omitted). Per the Eighth Circuit:

> Under the "lodestar" methodology, the hours expended by an attorney are multiplied by a reasonable hourly rate of compensation so as to produce a fee amount which can be adjusted, up or down, to reflect the individualized characteristics of a given action. Another method, the "percentage of the benefit" approach, permits an award of fees that is equal to some fraction of the common fund that the attorneys were successful in gathering during the course of the litigation. It is within the discretion of the district court to choose which method to apply, as well as to determine the resulting amount that constitutes a reasonable award of attorney's fees in a given case.

*Caligiuri v. Symantec Corp*, 855 F.3d 860, 865 (8th Cir. 2017), citing *In re Life Time Fitness*, 847 F.3d at 622 and *Johnston* (internal citations and punctuation omitted).

The Court further finds that the Settlement negotiated by Class Counsel has created significant value for the Class. The Defendants have agreed to pay the following amounts in furtherance of this Settlement with the Class:

- Benefit Fund: $275,000
- Administration and Notice Costs: $39,775[2]
- Service Award: $5,000
- Attorneys' Fees & Costs: $125,000

**Total**             **$444,775**

Note that attorneys' fees, costs, the costs of notice of administration and related expenses borne by the Defendants are all properly considered in assessing the value of a settlement. *In re Life Time Fitness, Inc., Tel. Consumer Prot. Act (TCPA) Litig.*, 847 F.3d 619, 630 (8th Cir. 2017); *In re Heartland Payment Sys.*, 851 F. Supp. 2d 1040, 1078-79 (S.D. Tex. 2012), citing *Johnston v. Comerica Mortg. Corp.*, 83 F.3d 241, 246 (8th Cir. 1996); *Caligiuri v. Symantec Corp.*, 855 F.3d 860, 865 (8th Cir. 2017). While the attorneys' fees, costs, administration and notice cost, and service award are being paid directly by the Defendant rather than into a common fund out of which these amounts are paid, the Court notes that all amounts paid in

---

[2] *See* Dkt. 52-1.

connection with the settlement are coming from a common source. Thus, the Court finds that the "percentage of benefit" approach to be the most appropriate methodology for determining fees in this case. *See, e.g., In re Tex. Prison Litig.*, 191 F.R.D. 164, 176 (W.D. Mo. 2000); *see also Blum v. Stenson*, 465 U.S. 886, 900 n.16, 104 S. Ct. 1541, 79 L. Ed. 2d 891 (1984) (recognizing that fees should be a "percentage of the fund bestowed on the class"); *Johnston*, 83 F.3d at 246; *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 821 (3d Cir. 1995) ("The rationale behind the percentage of recovery method also applies in situations where, although the parties claim that the fee and settlement are independent, they actually come from the same source.").

As a percentage of the value of the benefit of the Settlement, the requested fee of $125,000 represents 28.34% of the $444,775 distributed in connection with the Settlement. This is consistent with, and actually less than, the ratio of fees awarded in individual contingent fee cases and other consumer class action cases in this Circuit. *See e.g., Caligiuri,*, 855 F.3d at 865 (awarding one-third of total fund); *Huyer*, 849 F.3d at 399-400 (8th Cir. 2017) (same); *In re U.S. Bancorp Litig.*, 291 F.3d 1035, 1038 (8th Cir. 2002) (attorneys' fee award of 36% of fund). Thus, considering the relevant factors, including most notably the excellent result obtained for the Class and the amount of the award compared to similar fee awards in this Circuit, Class Counsel's request for attorneys' fees in the amount of $125,000 will be approved.[3]

---

[3] The Court also notes that the Parties agreed upon the substantive terms of the Settlement before any discussion of attorneys' fees occurred. When the parties agreed upon the terms of Settlement back on October 12, 2017, the issue of attorneys' fees was expressly **not** resolved, with the parties agreeing to attempt to negotiate the issue in good faith, and that Plaintiff would submit a fee Petition to the Court in the event those negotiations were unsuccessful. *See* Dkt. 52. at ¶4. Those negotiations continued and the parties only reached agreement on January 24, 2018, shortly before the Settlement was presented to the Court. *Id.* at ¶5. Because fees were only discussed after settlement, and because the fees are paid in addition to the Class' recovery, the Court is not concerned that agreed upon fee was the result of collusion between the Parties.

Defendants have also agreed to pay a $5,000 service award to the named plaintiff, subject to the approval of the Court, in connection with this litigation. Courts routinely grant service awards in connection with class action settlements to promote the public policy underlying class action litigation by encouraging individuals to vindicate rights on behalf of a others similarly situated. *Caligiuri*, 855 F.3d at 867 (8th Cir. 2017). In determining an appropriate service award, this court should consider: "(1) actions the plaintiffs took to protect the class's interests, (2) the degree to which the class has benefitted from those actions, and (3) the amount of time and effort the plaintiffs expended in pursuing litigation." *Id.* citing *In re United States Bancorp Litig.*, 291 F.3d at 1038. Here, the named plaintiff assisted in the factual development of the case, answered discovery, and was readying for his deposition at the time settlement was reached. *See* Dkt. 52 at ¶3. Being duly advised, the Court finds that the $5000 service award is appropriate and should be approved. *See e.g. Caligiuri*, at 867 ("courts in this circuit regularly grant service awards of $10,000 or greater.").

## V.   THE PROVISIONAL CERTIFICATION OF THE CLASS SHOULD BE MADE FINAL

This Court previously certified a settlement class on a provisional basis so that notice could issue. Defendants do not challenge class certification for purposes of this Settlement. For the same reasons set forth in this Court's preliminary approval orders [Dkts. 42 & 46], which are incorporated herein by reference, certification for final settlement is appropriate under Federal Rule of Civil Procedure Rule 23.

## VI.   CONCLUSION

Consistent with the foregoing, the Court now rules as follows:

- The proposed Settlement is approved;

12

- Plaintiff's motion for final approval of class action settlement and motion for attorneys' fees (Doc. No. 55) is **GRANTED,** as set forth in this order;

- Defendant shall pay $275,000 into a fund for the benefit of the Class;

- Signal Interactive Media LLC shall distribute the Settlement proceeds consistent with the Settlement Agreement;

- Defendant shall pay $125,000 to Class Counsel as attorneys' fees and costs, and $5,000 to Class Representative Brian Fellows as a Service Award;

- All payments due to be made by Defendant pursuant to the Settlement Agreement shall be made within thirty (30) days of this Order;

- This matter is hereby **DISMISSED with prejudice**; and

- The Clerk is directed to enter judgment consistent with the foregoing.

**IT IS SO ORDERED.**

Dated: _June 20_ 2018

_____
Hon. John A. Ross